# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. CR409-107 |
| ) | |
| KENT ALLEN CRAWFORD ) | |
| ) | |

## **REPORT AND RECOMMENDATION**

A prominent celebrity is outspoken about his belief in Scientology and distaste for psychiatry. Kent Allen Crawford, too, is outspoken about his religious beliefs (in his case Seventh Day Adventism) and distaste for psychiatry. Crawford drove those points home while testifying before this Court during a "4241 hearing"[1] to prove he is competent to plead guilty to violating the terms of his supervised release.

---

[1] *See* 18 U.S.C. § 4241(a)-(d) (courts determine such competency upon defense or prosecution's motion); doc. 45 (the Government so moved). The Court determines

> if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a).

Unlike that celebrity, however, Crawford is a serial felon who has spent much of his adult life in prison and mental-health institutions. And instead of the proverbial ex-wives and paparazzi moments, his life's wake is littered with over-the-top episodes (*e.g.*, phoned a bomb threat *directly* to the FBI; asked a urologist cut his genitals off; attempted suicide in a Home Depot parking lot). So it comes as no surprise that the Government wants this Court to find him not competent to proceed with the revocation proceedings that it commenced over his latest offense (failure to report to his Probation Officer). Docs. 43, 57.

As part of those proceedings, the Court directed Crawford's evaluation, which produced a "he's incompetent" report, then conducted a hearing. Recounting Crawford's lengthy record of crimes and institutionalizations, a Federal Bureau of Prisons Psychologist opines that he suffers from "Schizoaffective Disorder" and "Borderline Personality Disorder." CR409-107, doc. 58 at 3. Plus, he currently "is in an active state of psychosis" that prevents him from assisting in his own defense. *Id.* at 4, 6. Crawford, however, quite lucidly testified that he

simply manipulated her and otherwise understands the proceedings against him. The Court finds him "§ 4241 competent."

## I. BACKGROUND[2]

Crawford has a long history within the federal court/prison system, and his now fairly consistent behavior (outrageous stunts that fetch him "three hots and a cot") reveals a fairly consistent end-point for him: an extended stay at the "Federal Inn," in preference over living on the street. Over nine years ago, the same forensic psychologist, Lisa B. Feldman, Psy. D., opined that he was incompetent to stand trial for violating 18 USC § 844(e) (threat to destroy building by fire or explosive). *United States v. Crawford*, CR407-284, doc. 13 at 14 (S.D. Ga. Feb. 5, 2008) (Feldman's report); doc. 38 at 1 (his 2009 guilty plea agreement to that charge). The Court agreed, citing his extensive history of mental health treatment beginning at the age of sixteen, when he was hospitalized due to an antihistamine overdose and diagnosed as a paranoid schizophrenic. Doc. 18 at 10-11. Feldman's 2017 diagnosis includes schizophrenia, coupled with Borderline Personality Disorder (BPD), and she has relied on his extensive record to support that

---
[2] Except where otherwise noted, the facts in this section are taken from the Court's ruling in *United States v. Crawford*, CR407-284, doc. 18 (S.D. Ga. Mar. 12, 2008).

conclusion -- a record that's particularly critical here since Crawford, as in the past, refused to cooperate in her attempt to assess him.

That record shows that between the ages 19 and 32, Crawford endured approximately ten to twelve psychiatric inpatient hospital admissions. Following a one-year period of hospitalization ending in 1984, he barricaded himself in a room with a gun to his head, resulting in a five-hour police standoff. CR407-284, doc. 18 at 2. In 1993, Crawford was convicted of mailing threatening communications to local physicians. *Id*. (citing *United States v. Crawford*, No. 493CR043 (S.D. Ga., filed Nov. 18, 1993)). He had approached a Savannah, Georgia, urologist about groin pain and asked that he cut his genitals off. Finding nothing physically wrong with Crawford, the urologist referred him to a psychiatrist. Shortly thereafter, defendant began mailing and phoning threats to that doctor's home, office, and family. He also threatened a Savannah area dentist. *Id*. at 2-3.

Although Crawford was found competent to stand trial for that 1993 case, his evaluating psychologist, Dr. Scott Duncan, Psy. D., diagnosed him with polysubstance dependence (in remission), major

depression with obsessive-compulsive traits, hypochondriasis, passive aggressive personality disorder, and antisocial personality disorder. CR407-284, doc. 18 at 3.

Crawford was tried, convicted, and sentenced to sixty months' imprisonment. Soon after he began serving that sentence, however, his mental condition deteriorated, and his behavior resulted in his transfer from the Federal Correctional Institution in Tallahassee, Florida to the Federal Correctional Institution in Butner, North Carolina. Shortly thereafter, the Eastern District of North Carolina ordered that he be committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility -- until he no longer required treatment or until his sentence expired. *United States v. Crawford*, No. 5:94hc331 (E.D.N.C. June 9, 1994). CR407-284, doc. 18 at 3.

At FCI Butner, defendant was diagnosed as suffering from schizophrenia, undifferentiated type; depressive disorder; polysubstance abuse; and BPD. He was placed on suicide watch approximately eighteen times during his stay there. After a suicide attempt in April of 1995, Crawford was reportedly preoccupied with the delusion that he was

imprisoned for his religious affiliation with the Seventh Day Adventists (he was asked about this at the June 21, 2017 hearing, and denied harboring this delusion). He reported to examiners that the government incarcerates everyone who refuses to worship on Sundays. CR407-284, doc. 18 at 3-4.

Upon completion of that sentence, the Government civilly committed Crawford pursuant to 18 U.S.C. § 4246, as it was determined that his release would pose an unacceptable risk to the community. Consequently, he was transferred to the United States Medical Facility for federal prisoners in Springfield, Missouri, where he was diagnosed with schizophrenia and BPD. While in Springfield, defendant became increasingly paranoid and delusional. He believed that the staff members were conspiring against him due to his knowledge of their illegal behavior. As Crawford had consistent difficulties with the staff in the Springfield facility, he was transferred to the Federal Medical Center in Devens, Massachusetts in 2004. CR407-284, doc. 18 at 4-5.

In Devens, the psychology staff found Crawford to be irascible and uncooperative. He refused psychotropic medication. In 2006, Crawford

once again began verbalizing his belief that staff and other inmates were treating him unfairly due to his religious beliefs. He wrote several letters threatening suicide or the murder of a staff member. In August of 2006, the Risk Assessment Panel at the Devens facility assigned him the diagnoses of psychotic disorder, alcohol abuse, cocaine abuse, and borderline personality disorder. They recommended that his commitment be continued because his release would create a substantial risk of injury to others. CR407-284, doc. 18 at 4-5.

On June 4, 2007, a district judge for the Eastern District of North Carolina held a hearing pursuant to 18 U.S.C. § 4247(h). Crawford's treating psychiatrist testified that he did not believe that defendant met the diagnostic criteria for a major mental illness. The Risk Assessment Panel, however, still believed that he should remain institutionalized. Based upon the evidence presented at the hearing, the district court found that Crawford no longer met the criteria for such commitment and ordered his release. CR407-284, doc. 18 at 5-6.

But defendant was held in Devens for an additional sixty days so that the authorities could attempt to "find some humanitarian

7

disposition for [him], by way of state placement or otherwise." CR407-284, doc. 18 at 6 (quotes and cite omitted). On August 3, 2007, he was released from Devens. He immediately traveled by bus to Savannah. Within two weeks local police admitted him to Memorial Hospital after he once again threatened one of the same physicians he targeted in his original federal offense. Memorial Hospital transferred him to Georgia Regional Hospital, a psychiatric facility, on August 14, 2007. Upon admission, defendant was diagnosed with schizoaffective/psychosis and major depression. *Id.*

On August 29, 2007, during his stay at Georgia Regional, Crawford contacted the Savannah branch of the Federal Bureau of Investigation by telephone and claimed that he was going to "blow up" their office. He called the office three times in approximately thirty minutes. During the final call, he told Senior Supervisory Resident Agent Bill Kirkconnell that he made the threats in order to be transferred from the mental health facility, where he was allegedly treated poorly, to a federal prison. That tactic -- committing a crime to *remain* confined, and in the institution of his choice -- resurfaces here. CR407-284, doc. 18 at 6-7.

For his bomb threats, Crawford was prosecuted but initially found incompetent to stand trial, and "insane at the time of alleged offense." CR407-284, doc. 13 at 14-15 (Feldman's Report reaching that conclusion); doc. 18 (Court's ruling accepting same). Later, however, the Court determined that Crawford's competency had been restored, doc. 29, and accepted his guilty plea to violating 18 U.S.C. § 844(e). Doc. 38 (agreement); doc. 40 (Judgment imposing 21 months). The Court ultimately revoked his supervised release in CR407-284, doc. 49 at 3 (15 month sentence), and in *United States v. Crawford*, CR409-107, sentenced him to 77 months, consecutive to that 15-month sentence, for violating 18 U.S.C. § 115 ("Threatening a federal official"), followed by three years of supervised release. CR409-107, doc. 31 at 1, 3. When his incarceration ended in late 2016, Indiana prison officials put him on a bus to Savannah with a month's supply of mental health medications and directed him to comply with the terms of his supervised release.[3]

Crawford's return to Savannah sparked yet another nightmare passage in his life. Upon arrival, he decided that he did not want to abide by his supervised release obligations. Instead, he wanted to serve out the

---

[3] The Court does not have a transcript of the June 21, 2017 hearing in this matter, but is finding some of the above-noted facts from the testimony given therein.

remainder of his sentence in custody -- "to be done with it." So, instead of reporting (as required) to his release supervisor within 72 hours of his Savannah arrival, he drove to a Savannah Home Depot store parking lot and tried to commit suicide by swallowing his month's supply of drugs. Rescued but then charged with violating his supervised release, doc. 34, *as amended*, doc. 46, Crawford once again has refused to cooperate with Feldman (he was at her facility from January to March, 2017), echoing his past defiance toward her.

## II. ANALYSIS

In her written report and June 21, 2017, hearing testimony, Feldman opines that Crawford is not competent to proceed to a revocation hearing. Doc. 58 at 5 (his prognosis is "poor" and "mental status is unstable"); *id.* (he is incompetent to stand trial and should "undergo mandatory competency restoration treatment. . . ."). Since (as has happened in the past) Crawford refused to cooperate (answer her questions, etc.),[4] she necessarily bases her opinion on the above-recited

---

[4] Unquestionably, defendant knows the ropes. This is from the Court's 2008 ruling:

> At the court-ordered psychological evaluation in the Federal Detention Center in Miami, Florida, defendant was argumentative and refused to respond to most questions posed him. He refused to cooperate with any testing.

record, her observations, and the abusive letters and emails that he generated during that January-March period (in them he has repeatedly -- yet predictably -- complained that the Government was persecuting him because of his devotion to the Seventh Day Adventist Church, etc.; Feldman -- also predictably -- has declared such delusions "entrenched").

Crawford testified in rebuttal, however. He *agreed* that he suffers from BPD but *not* Schizoaffective Disorder. Still, he insisted that his BPD is not impairing his ability to participate in his revocation-hearing defense. He articulately and accurately stated his understanding of the revocation charges and potential penalties against him. He fully detailed his understanding of the revocation hearing process (*e.g.*, that the government has the burden of proof, that he would be able to assist in his defense by testifying, etc.). He even explained why he wants to plead

---

Accordingly, Dr. Feldman spent considerable effort reviewing defendant's history in making her evaluation.

CR407-284, doc. 18 at 7. That's also what he did this time around. And, just as then, Feldman found him not competent to participate in legal proceedings against him. *Compare id.* at 10 ("his present diagnosis of schizophrenia and delusional thought processes renders him incompetent to stand trial."), *with* CR409-107, doc. 58 at 5 (opining that he is incompetent to stand trial and should undergo mandatory restoration treatment). It is worth noting that twice Feldman has reached a relatively dramatic conclusion (mentally ill to the point of forced medication) more or less based only on (since Crawford won't talk to her) defendant's writings, his record as noted above, and his observed behavior.

11

guilty and be returned to prison: It's preferable to supervised release, where his supervisor will inevitably "find some way" to violate him. He thus seeks to avoid that extra layer of angst.

In that regard, Crawford explained that he did not cooperate with Feldman because he believes "it's a waste of time."[5] He instructed current counsel to offer his guilty plea to revocation so he could serve his time and then be forever free of supervision, and thus sees no productive point to further evaluation. To that end, he wrote disturbing letters and emails in no small part to needle and belittle mental health professionals -- his way of expressing his disdain for them.[6] His letter to the undersigned, as he testimonially affirmed, reflects his ability to think strategically:

---

[5] Crawford even explained the basis for his disrespect for the evaluative process. He has been found, he claims, *competent* for the sake of prison disciplinary hearings but *not* competent for court proceedings. *See also* CR493-043, doc. 44 (from defendant's Jan. 19, 2017 letter to this Court: "I've been ta[l]king with psychology against my better judgment because it's a waste of time and taxpayer[']s money.").

[6] For example, in his email to a "Dr. Haynik," he recounted a story about a male patient's failure to see anything in the ink blot pictures a female psychologist showed to him. When she insisted "you must see something," the "young lad said OK I see you and me on the beach holding hands and sipping martinis. The psychologist thought to herself I knew I should've become a nurse like my mother." CR409-107, doc. 58 at 51. Crawford testified that he was "having fun" with some of his emails.

> Why would I plead insanity when I've already got a 24-month sentence, maximum of 36 months? Even if I were in a medical center I could end up doing more than 24 months and run the risk of a 42, 46, which I would not be able to complain about, unlike the illegal commitment done to be under Borderline Personality Disorder, 1997-2007. And I won't forget that the government owes me 10 years.[7]

Doc. 51 at 1 (footnote added).

True, Crawford's often eminently disagreeable opinions and religious-based beliefs would lead many a lay person to dismiss him as a crank, but pretty much every town has one -- and they aren't locked up. Lots of perceived lunacy ambles down Main Street "un-netted."

More importantly, the Court is *statutorily* limited to determining whether Crawford "is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). That's different than deciding if someone is of grossly deficient character (*i.e.*, that they are mean, vengeful, ply wild conspiracy theories to get what they want, etc.).[8]

---

[7] When asked by the Government about his "ten years" remark, he contended that his 1997, BPD diagnosis was not permitted by law to support the incompetency finding (and institutionalization) then made against him.

[8] The legal test for competency in this context, it must be remembered, is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual

13

A preponderance of the evidence convinces this Court that Crawford is cantankerous, petty and just plain spiteful -- *and* that he fully appreciates that. He also credibly expressed his realization that many of his (most notably his Adventist) beliefs and convictions are not well-received, if not dismissed outright. That in and of itself evinces a convincing grasp of reality. On top of that is the defendant's notable level of diction, grammar and composition (both verbal and written), which reflect a focusable intellect enabling basic, non-delusional communication skills. He claims an ability to assist in his defense; he simply chooses not to mount one -- and on rational grounds at that. His attorney concurs.

There's another factor that figures into the Court's conclusion. In a sadly touching exchange with the Court, Crawford candidly admitted that he has no plan for supporting himself once he's released

---

understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quotes and cite omitted). Indeed, "[i]ncompetency to stand trial is not defined in terms of mental illness. As such, a defendant can be competent to stand trial despite being mentally ill and similarly[,] a defendant can be found incompetent to stand trial without being mentally ill." *United States v. Short*, 2017 WL 772343 at * 2 (S.D. Ga. Feb. 28, 2017) (quotes and cite omitted). And "[n]either proof of low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior is necessarily equated with mental incompetence to stand trial." *Medina v. Singletary*, 58 F.3d 1095, 1107 (11th Cir. 1995) (quotes and cite omitted), quoted in *United States v. Ball*, 2017 WL 563070 at * 1 (N.D. Ga. Feb. 13, 2017).

to the streets (presumably yet another bus ride to Savannah, if not another prelude to self-ruination). He fully appreciated the obvious uphill battle to survive beyond prison/institutional walls. His tone revealed a deep sense of insecurity, if not naked fear, of trying to survive after being locked up for so much of his life (given his record, who in their right mind would hire him?). He evinced this after he freely admitted that he's made a career out of threatening others. And along the way, he validated his pattern of pulling stunts outrageous enough to obtain a room at the "Federal Inn."

It's therefore reasonable to conclude that Crawford is competent enough to play crazy-like-a-fox to get what he wants.[9] His bottom line: "I would rather go to prison and do my time and get out and have no

---

[9] From the Court's March 12, 2008 ruling:

> At the hearing, defendant spoke on his own behalf and contested Dr. Feldman's evaluation. In support of his viewpoint, he referenced a series of "confession" letters he sent to the Court over the previous weeks. He also presented a new letter while at the hearing. In the letters, defendant clearly and cogently explained that he made the threatening phone calls to the FBI hoping that he would be arrested and imprisoned in a federal facility in the general population. He wanted out of Georgia Regional. He further stated that he "did understand [his] actions were illegal and carried [the punishment of] imprisonment." (Doc. 17 Ex. 1.)

Doc. 18 at 9.

probation. . . . I know a lot of people who'd rather go back and get done with it." That's a not-irrational, strategic level of thinking -- and now a well-worn route.[10] He admits that he tried to kill himself, but he also insists that he currently is clear-headed and competent enough to appreciate, and assert, that it's worth it to him to remain incarcerated rather than be supervised while released.[11] Functioning at that level only reinforces this Court's conclusion that he is *not* incompetent within the meaning of 18 U.S.C. § 4241(a).

---

[10] Again, the Court's 2008 ruling noted Crawford's non-cooperation, *see supra* n. 4; CR407-284, doc. 18 at 7, which he just repeated, leading Feldman to again find him not competent to participate in legal proceedings against him. *Id*. at 10 (her 2008 report) ("his present diagnosis of schizophrenia and delusional thought processes renders him incompetent to stand trial."); CR409-107, doc. 58 at 5 (her 2017 report) ("appears to be in an active state of psychosis that severely impairs his rational understanding of the legal proceedings against him. . . . [He should] be found Incompetent to Stand Trial. . . ."). Crawford's response this time: "This is just an underhanded and satanic way to spread the money around and make it look like the Doctors are earning their paycheck, for phony evaluations." Doc. 51 at 1. When asked, he denied that he used the word "satanic" literally; rather, he meant that the mental health professionals were proceeding in an evil manner -- cynically misusing the process to justify professional compensation at the expense of obstructing his goal (to win placement within "the system" that suits him best).

And so it goes. . . .

[11] This is not at all "delusional." Note the above-passage about lack of a plan, let alone confidence, to make it on "the outside."

## III. CONCLUSION

The Court finds, by a preponderance of the evidence, that Kent Allen Crawford is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense. 18 U.S.C. § 4241(d). It is therefore recommended that he proceed to his revocation hearing. Accordingly, the Government's motion to remand him to the Attorney General for competency restoration should be **DENIED**. Doc. 53.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED** 10th day of July, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA